IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUDY CANDELARIA,

       Plaintiff,

v.                                                                                    Civil No. 98-1225 BB/WWD

NEW MEXICO DEPARTMENT OF CORRECTIONS,
DONNA McCORD WILPOLT, Acting
Secretary of Corrections,
MANUEL ROMERO, Associate Warden,
JOHN SHANKS, Director of Adult Prisons,
TIM LeMASTER, Warden,
RALPH LUCERO, Deputy Warden,
WILFORD ROMERO, Associate Warden,
ROBERT CONN, Correctional Officer,
MICHAEL BRADY, Correctional Officer,
JIMMY CHAVEZ, Correctional Officer,
BRIAN MOLINA, Correctional Officer,
LYNDEN HICKMAN, Correctional Officer,
PHILLIP MARES, Correctional Officer,

       Defendants.

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION

1. THIS MATTER comes before the Court following submission of a court-ordered Martinez report and response. Plaintiff, who is currently incarcerated, filed his civil rights complaint while proceeding *pro se*, but has since been appointed counsel [see docket # 41].

### BACKGROUND

2. Plaintiff ("Candelaria") was the victim of a stabbing incident which occurred on July 4, 1996 at the Penitentiary of New Mexico's ("PNM") Main Facility in Santa Fe. He alleges that Defendants were deliberately indifferent to his health and safety by ignoring his complaints that his

life was threatened and in danger by other inmates and by failing to remove him from the general population at that time. Candelaria claims that on or about June 24, 1996, he notified Defendants Manuel Romero, Shanks, LeMaster, Lucero, and Wilford Romero "by way of oral communication and through writing," Pet. at 8, that his life was in danger. A few days later, he also complained to Defendant Mares that he "needed protection" but "[n]othing was done." Pet. at 8.

    3. On July 4, 1996, as Candelaria entered the facility's dining hall, he told Defendant Conn that "something was fixing to happen that might put his life in danger." According to Plaintiff, Conn told him he would "keep an eye on things and that [Plaintiff] should not be so paranoid." Pet. at 8-9. As Candelaria was sitting down to eat, he was attacked by inmate Luis Valtierra who stabbed him repeatedly with what was later described as a prison-made shank. Candelaria claims that he screamed for help during the attack, but that Defendants Conn, Brady, Chavez, Molina and Hickman "simply stood by and watched" while Valtierra attacked him. Pet. at 9.

    4. Candelaria was treated for multiple stab wounds to his chest, back, neck and head at St. Vincent's Hospital, then sent back to the infirmary at PNM. See Exs. 49-53 (medical records).[1] Following discharge, the facility's Reclassification Committee considered alternatives to continued long-term administrative segregation, such as in-state transfers and out of state placement. At the end of July, Plaintiff was transferred to Southern New Mexico Correctional Facility ("SNMCF"), Ex. 10, and at the end of August 1996, was released back in to the general population at that facility, Exs. 11, 12.

    5. In May 1997, PNM's Institutional Reclassification Committee reviewed a proposed

---

[1] Exhibits are those attached to Defendant's Martinez report unless otherwise noted.

lateral transfer of Plaintiff to Western New Mexico Correctional Facility ("WNMCF"), due to threats Plaintiff had received from the inmate gang Sindicato Nuevo Mexico ("SNM") while he was in the general population at SNMCF. The committee determined that these threats were related to the July 1996 stabbing, and to a debt which Candelaria had owed to the gang. The transfer was never effected due to lack of space.

6. For some reason, Plaintiff refused to request voluntary administrative segregation. Instead, he engaged in conduct such as "assaulting staff" and "setting papers afire in his cell" in order to receive additional misconduct time and continue in disciplinary segregation, where he stayed until August 7, 1997. Exs. 15, 16. Candelaria was transferred the following day back to PNM's North Facility, where his involuntary administrative segregation continued. At the end of that month, Plaintiff waived his protective custody status. Ex. 33.

## DISCUSSION

7. In his complaint, Plaintiff refers to violations of 42 U.S.C. § 1981, § 1982, § 1983, § 1985, § 1986 and § 1988, as well as state claims under the New Mexico Tort Claims Act, N.M.S.A. 1978 § 41-4-6, §41-4-9, §41-4-10, and § 41-4-12. Compl. at 3. Candelaria's claims against the corrections officers are based on personal violations of his rights, while claims against the remaining Defendants, such as the associate wardens, charge them with "enforcing the policies and practices" that Plaintiff seeks to have redressed. These policies regard investigations of complaints of "abuse of persons inside DOC" including "assignment of inmates to areas where they should not be housed, because inadequate supervision is provided in these areas." Compl. at 4.

8. The Order for the Martinez report notified parties that the report may be used in

deciding whether to grant summary judgment on Plaintiff's claims [docket # 27 at 3]. After reviewing the pleadings and evidence submitted thus far, I find that while most of Plaintiff's claims fail to state sufficient facts to support a claim, his claim under the Eighth Amendment alleging deliberate indifference to his health and safety is viable, raises factual disputes, and should proceed to trial.

*§ 1983 Claims: First, Fourth and Eighth Amendment*

9.  Taking Plaintiff's allegations as true, Defendants may have acted with deliberate indifference toward Candelaria's health and safety by failing to protect him from the stabbing which took place on July 4, 1996. See Jojola v. Chavez, 55 F.3d 488 (10th Cir. 1995) (court must accept all the well-pleaded allegations of the complainant as true when considering dismissal under Fed.R.Civ.P.12(b)(6)). However, these allegations support a § 1983 claim under the Eighth Amendment only. See Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998) (claims concerning conditions of confinement remain "bounded by the Eighth Amendment, the explicit textual source of constitutional protection in the prison context").

10. Plaintiff's passing reference to violations of the First and Fourth Amendment, Compl. at 2, are not accompanied by any relevant factual allegations and should be dismissed. See Nolan v. McAdoo, 39 f.3d 269 (10th Cir. 1994) (a complaint may be dismissed as a matter of law if there are insufficient facts under any cognizable theory).

*Equal Protection Claim*

11. Plaintiff's equal protection claim is similarly devoid of factual support. Compl. at 15. In order to state a claim based on the Equal Protection Clause, a plaintiff must sufficiently allege that defendants were motivated by racial animus. See Village of Arlington Heights v.

Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265 (1977), cited in Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1269 (10th Cir. 1989). The complaint fails to disclose any allegation of a class discrimination or some form of disparate treatment. Plaintiff therefore fails to state a claim under the Equal Protection Clause. See, e.g., Jacobs, Visconsi, & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1118 (10th Cir. 1991).

*§ 1985 and § 1986 Claim*

12. Section 1985(3) creates a cause of action against persons who conspire to deprive a person or class of "equal" protection or "equal" privilege and immunities. A violation of §1985 must include class-based or racially discriminatory animus. Bisbee v. Bey, 39 F.3d 1096, 1102 (10th Cir. 1994). Plaintiff has failed to specifically allege facts which state a claim of discriminatory intent, much less any facts which would show that Defendants were involved in a conspiracy which violated §1985. Id. ( "[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985") (quoted case omitted).

13. A § 1986 claim is dependent upon the existence of a valid claim under § 1985. Brown v. Reardon, 770 F.2d 896, 907 (10th Cir. 1985). Because Plaintiff has failed to state a claim under § 1985, a § 1986 action for neglect to prevent a § 1985 violation cannot stand either.

*§ 1981 & § 1982 Claim*s

14. 42 U.S.C § 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts. See, e.g., Johnson v. Railway Express Agency, 421 U.S. 454, 459-460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). To make a claim under section § 1981, a plaintiff must show that a defendant intentionally or purposefully discriminated against them. General Bldg. Contractors Ass'n, Inc. v.

5

Pennsylvania, 458 U.S. 375, 391 (1982); Reynolds v. School Dist. No. 1, Denver, Colorado, 6 F.3d 1523, 1532 (10th Cir. 1995).

15.     Aside from a question of whether a § 1981 claim, which envisions a contract of some kind, including employment contracts, is applicable in the context of Plaintiff's claims, there are no facts alleged which suggest discriminatory intent.  See, Patterson v. McLean Credit Union, 491 U.S. 164, 186-87 (1989) (in order to survive a motion to dismiss on a section § 1981 claim, plaintiff must at a minimum allege facts that suggest an intentional deprivation of rights); Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1313 (9th Cir. 1992) (§ 1981 plaintiff must "at least allege facts that would support an inference that defendants intentionally and purposefully discriminated against them").

16.     Nor does Plaintiff allege any facts, or state any specific allegations, which can be construed as a § 1982 claim.  Aside from the lack of allegations of racially discriminatory intent, there are no facts suggestive of violations of the right to "inherit, purchase, lease, sell, hold, and convey real and personal property," which are the specific rights protected under the statute. Thus, both the § 1981 and § 1982 claims also should be dismissed for failure to state a claim.

**New Mexico Tort Claims Act**

17.     On page 10 in the complaint, Plaintiff raises claims of Intentional Infliction of Emotional Distress, False Arrest and Imprisonment  and Aggravated Battery under the New Mexico Tort Claims Act, N.M.S.A. 1978, § 41-4-6, § 41-4-9, § 41-4-10, and § 41-4-12.  Plaintiff named the New Mexico Department of Corrections as a Defendant, which has been dismissed as a party in this suit on Eleventh Amendment grounds.[2]  See docket # 7 at 2.  This immunity would

---

[2] The individual Defendants have also been dismissed in their official capacity.

6

also apply to any claims under the Tort Claims Act, which makes government "responsible for the torts of its employees. . . under the doctrine of respondeat superior. . . ." Medina v. Fuller, 126 N.M. 460, 463 (Ct.App. 1998); N.M.S.A. 1978, § 41-4-4(E).

18.  Thus, this Court does not have jurisdiction over these claims notwithstanding the waiver of sovereign immunity pursuant to the Tort Claims Act, since the state "does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." College Savings Bank v. Fl. Prepaid Postsecondary Education Expense Bd., U.S. 527, 666, 675 (1999), cited in Ward v. Presbyterian Healthcare Svs., 72 F.Supp.2d. 1285, 1293 (D.N.M. 1999); see also N.M.S.A. 1978, § 41-4-4(F) ("Nothing in Subsections B, C and D of this section shall be construed . . . as a waiver of the state's immunity from suit in federal court under the eleventh amendment to the United States constitution").[3]  These claims are dismissed without prejudice for lack of jurisdiction.

---

[3]  Although dismissal is without prejudice based on lack of jurisdiction, I note that the merit of Plaintiff's claims under the Act are questionable at best.  Sections 41-4-9 and 41-4-10 concern liability of medical facilities and health care providers, yet there are no allegations of injuries resulting from medical care.  Plaintiff's claim under § 41-4-12 (Liability of law enforcement officers) does not apply here, since corrections officers are not law enforcement officers) under the Act.  Callaway v. N.M. Dep't of Corrections, 117 N.M. 637, 641 (Ct.App. 1994), cert. denied, May 17, 1994.

Finally, Plaintiff's claim that Defendants were negligent in protecting him from physical danger by failing to place him in segregation would not be cognizable under § 41-4-8 (negligence of public employees in the operation or maintenance of buildings).  The security, custody, and classification of inmates does not comprise the "operation" and "maintenance" of penitentiary premises.  See Archibeque v. Moya, 116 N.M. 616, 619 (1993).   Plaintiff is not contending, nor do the facts support, that the assailants were generally dangerous, or that Defendants should have known the assailants posed any more of a threat to inmates' safety than other inmates in the general population.  See Callaway at 643 (distinguishing Archibeque).

**§ 1983 - based on Eighth Amendment**[4]

19. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Jones et al v. Kodak Med'l Assistance Plan, 169 F.3d 1287, 1291 (10th Cir. Utah) (citing Fed.R.Civ.P. 56(c)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

20. Prison officials are liable under the Eighth Amendment for denying an inmate humane conditions of confinement if the officials know of and disregard a substantial risk of serious harm to the inmate. Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994); see Northington v. Jackson, 973 F.2d 1518, 1525 (10th Cir. 1992) (prison officials liable for "obdurate and wanton disregard [of serious harm] for the inmate's safety"). The prison official must have a "sufficiently culpable state of mind," i.e., one of "deliberate indifference" to inmate health or safety. Farmer, 511 U.S. at 834; Green v. Branson, 108 F.3d 1296, 1302 (10th Cir.1997). It is clear that Candelaria has sufficiently alleged an injury which is "objectively sufficiently serious."

21. In the Martinez report, Defendants have submitted documentation which strongly supports their position that they were not deliberately indifferent to Plaintiff's safety during any of the times when they knew or had reason to know it was threatened. Defendants maintain that Plaintiff never asked to be administratively segregated or to be placed in protective custody prior to the July 4, 1996 incident. Although Plaintiff alleges that he notified certain Defendants with a

---

[4] Plaintiff's "claim" under 42 U.S.C. § 1988, Compl. at 10 ("First Claim for Relief) need not be addressed at this time, since the purpose of the statute is to award of attorney's fees for enforcement of § 1983 and other federal statutes.

written request for protection, the Martinez report does not include any such written documentation.

22. Defendants point out that Plaintiff was incarcerated in NMCD since 1981, and was very familiar with procedures for reassignments and reclassification requests in order to invoke such changes. Plaintiff had been placed in segregation once before, from July 1988 to August 1990, when he was a primary suspect in an inmate killing. Mart. Rep't, at 6, ¶ 15. During that time, Plaintiff had filed a civil rights lawsuit in this Court,[5] claiming denial of due process and cruel and unusual punishment *because* he had been placed in administrative segregation, allegedly without cause.

23. I agree with Defendants that Plaintiff's conduct surrounding the time of the stabbing incident is inconsistent with his allegations, and appears to belie his assertions of deliberate indifference on the part of Defendants. Prison documents and records show that at various times prior to the incident, including just one month before the stabbing, Plaintiff did not identify any inmates as enemies: Ex. 28 (Aug. 7, 1990); Ex.30 (Jan. 5, 1996); Ex. 31 (Apr. 2, 1996); Ex. 32 (June 27, 1996).

24. In fact, Plaintiff did not update his enemy alert card to include the name of the assailant until May 5, 1998, nearly two years after the stabbing incident. Ex. 34, Mart. Rep't, at 7, ¶ 23. Plaintiff's unsworn statements during the investigation following the incident indicate that, contrary to his assertions, he was *not* expecting to be harmed at the time. He told the investigator that he "heard that the clique was going to hit people," and then stated, "but I didn't think that it would be me." Ex. 42, (Dep't of Public Safety Rep't at 10).

---

[5] Candelaria v. Robert Tansy, et al, Civil No. 89-1277 JC/DJS.

25. During the year following the incident, Defendants continually assessed the status of Plaintiff's safety, either by placing him in administrative segregation, or by transferring him to the general population in another facility. See ¶ 4, above. When Plaintiff was threatened by members of the same group at this facility, Defendants took immediate measures to assess the situation and remove Plaintiff from possible danger. Exs. 11-16.

26. The questions in this case boil down to *first,* whether Defendants had reason to know Plaintiff's safety was threatened -- a question which arises from Plaintiff's assertion (though rebutted by Defendants) that he told several of them he felt his life was in danger just days before the stabbing-- and *second*, whether certain corrections officers just stood and watched the stabbing while Plaintiff was screaming for help -- a question which also arises from Plaintiff's assertion.

27. Although interviews were conducted which included the corrections officers named as Defendants (Brady, Hickman, Chavez and Molina), their statements are not conclusive as to the latter question. Reports of these interviews indicate that the officers observed the stabbing before Valtierra released the shank, but do not provide information as to the length of the observation, such that it is impossible to know from these documents whether Defendants' observation of the incident constituted deliberate indifference to Plaintiff's plight.

28. According to the interviews, the general consensus was that the corrections officers were standing behind the serving line when they heard the fight erupt. Valtierra was observed swinging the shank into Plaintiff's body repeatedly, and then flinging away the weapon. Ex. 42 ((Dep't of Public Safety Rep't at 7-9).

29. Defendant Conn, however, was not in the dining hall at the time of the incident, but

10

rather arrived there in response to a call about the fight. When he arrived, a staff member shouted to him to "stop the inmate in front of you. . . ," whereupon he then restrained Valtierra. Ex. 42, ("Use of Force Report Form").

30. The pertinent questions rest on issues of credibility. A recent unpublished Tenth Circuit case, involving an Eighth Amendment claim by a *pro se* inmate and facts which are very similar to this case, emphasized that a dispute of fact is created by a plaintiff's assertion in a complaint, which is treated like an affidavit and precludes summary judgment. See Gonzales-Liranza v. Naranjo, No. 99-2302, 211 F.3d 1278 (10th Cir.(NM) 2000) ( "if the facts described in a Martinez report conflict with those set out in such a verified complaint, summary judgment may not be granted because such a conflict creates an issue of fact").

31. Based on the foregoing findings, this case should proceed to trial. I find that the Plaintiff's First and Fourth Amendment claims and Equal Protection claim under 42 U.S.C. § 1983 should be dismissed with prejudice; Plaintiff's claims under 42 U.S.C. § 1981, § 1982, § 1985 and § 1986 should also be dismissed with prejudice; and Plaintiff's claims under the New Mexico Tort Claims Act should be dismissed without prejudice for lack of jurisdiction under the Eleventh Amendment. The remaining § 1983 claim, brought under the Eighth Amendment, should proceed to trial.

**Recommendation**

I recommend that: that the Plaintiff's First and Fourth Amendment claims and Equal Protection claim under 42 U.S.C. § 1983 should be DISMISSED WITH PREJUDICE; Plaintiff's claims under 42 U.S.C. § 1981, § 1982, § 1985 and § 1986 should also be DISMISSED WITH PREJUDICE; and Plaintiff's claims under the New Mexico Tort Claims Act should be

DISMISSED WITHOUT PREJUDICE for lack of jurisdiction under the Eleventh Amendment. The remaining § 1983 claim, brought under the Eighth Amendment, should PROCEED TO TRIAL.

    Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

                                                           _____
                                                     UNITED STATES MAGISTRATE JUDGE